**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                    **Case No. 8:25-cr-256-MSS-AEP**

**BRUCE RAYMOND ROBINSON, JR.**

_____/

**MOTION TO DISMISS COUNT ONE AND COUNT TWO:**
**CHALLENGE TO THE CONSTITUTIONALITY OF 18 U.S.C. § 2252A**

**NOW COMES** Defendant, Bruce Raymond Robinson, Jr., by and through

undersigned counsel, and moves this Court to dismiss Count One and Count Two

because the statute underlying these counts is unconstitutional, facially and as

applied.

**MEMORANDUM OF LAW**

The Supreme Court has maintained an exception to First Amendment

protections for child pornography.  It has provided two rationales for this exception:

(1) that the production of child pornography involves the abuse of the children

depicted, and (2) the child pornography itself is a permanent record of that abuse.

The Court has further explained that exceptions to First Amendment protection

cannot be created through a freewheeling cost-benefit analysis, but rather must be

longstanding with deep historical roots.

In Count One and Count Two, the Government alleges that Mr. Robinson

made pornography depicting a minor by using software to superimpose the likeness

of her face on the body of adult women.  Even by the Government's lights, the minor

was never sexually abused in the production of these depictions.  There was no abuse

that occasioned the pornography's creation and there was no abuse to permanently

record.  Mr. Robinson's conduct does not fit into the child-pornography exception to

the First Amendment, and the Court may not create a new exception to meet the

facts of the case.  Finally, the statute is not viewpoint neutral, and so may not be

tested at any level of scrutiny.  The statute underlying Count One and Count Two is

therefore unconstitutional facially and as applied, and the Court should dismiss those

counts.

**FACTS**

On June 29, 2023, someone uploaded a depiction of apparent child

pornography to a Google account.  When Google discovered this, it provided a

"cyber tip" to the National Center for Missing and Exploited Children (NCMEC).

NCMEC, in turn, alerted law enforcement.  Law enforcement identified the Google

account at issue, and served a search warrant on it.  Google provided the account's

contents, within which law enforcement found (1) the depiction described by the

cyber tip, and (2) images of Mr. Robinson's minor daughter's face superimposed on

the bodies of adult women engaged in sexual activity.  Many of these latter images

include sexually themed text.  For example, one image includes the text, "There is

no woman more perfect for a man than his own daughter."

2

Law enforcement identified Mr. Robinson as the owner of the Google account and interrogated him. Mr. Robinson admitted that the Google account was his and that he used it until Google shut it down. He said that he had photos of women "who were being portrayed as younger but were not actually young." Law enforcement showed Mr. Robinson some of the photos of the women with the minor's likeness superimposed, and he said that those were to the photos to which he referred, identifying the minor's likeness as hers. He said that he created some of the depictions using software, and that others had done the same and sent the results to him. A search of Mr. Robinson's devices revealed the depictions in the Google account, and others.

Count One of the indictment alleges that Mr. Robinson transported and attempted to transport "child pornography, as defined in 18 U.S.C. § 2256(8)(C) . . . ." in violation of 18 U.S.C. § 2252A(a)(2). Count Two alleges that Mr. Robinson possessed "child pornography, as defined in 18 U.S.C. § 2256(8)(C) . . . ." in violation of 18 U.S.C. § 2252A(a)(5)(b). The evidence supporting these charges is the depictions involving the superimposed images. Count Three and Count Four involve the depiction that was the subject of the NCMEC cyber tip, and are not at issue in this motion.

3

**ARGUMENT**

Section 2252A – given the definitions used in § 2256(8)(C) – is unconstitutional facially and as applied because it prohibits protected speech, i.e., depictions the production of which did not involve the sexual abuse of any minor.

The statute provides in relevant part,

> Any person who –
>
> > **(1)** knowingly mails, or transports or ships using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography; [or]
> >
> > …
> >
> > **(5)** …
> >
> > > **(B)** knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . .
>
> shall be punished as provided in subsection (b).

18 U.S.C. § 2252A(a).  The definition of child pornography relied upon by the

4

indictment provides that "child pornography" includes a "visual depiction [that] has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." *Id.* § 2256(8)(C).

> "[I]dentifiable minor" –
>
> **(A)** means a person –
>
>> **(i)(I)** who was a minor at the time the visual depiction was created, adapted, or modified;
>>
>> **(II)** whose image was used in creating, adapting, or modifying the visual depiction; and
>>
>> **(ii)** who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature; and
>
> **(B)** shall not be construed to require proof of the actual identity of the identifiable minor.

18 U.S.C. § 2256(9).

The First Amendment provides, "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amd. I. The "most basic" principle of the First Amendment is that "'government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 790-91 (2011) (citing *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002)). That is, "[a]s a general principle, the First

Amendment bars the government from dictating what we see or read or speak or hear." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245 (2002). "And whatever the challenges of applying the Constitution to ever-advancing technology, 'the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary' when a new and different medium for communication appears." *Id.* at 790 (quoting *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 503 (1952)).

"'From 1791 to the present,' however, the First Amendment has 'permitted restrictions upon the content of speech in a few limited areas,' and has never 'include[d] a freedom to disregard these traditional limitations.'" *United States v. Stevens*, 559 U.S. 460, 468 (2010) (quoting *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 817 (1992)). These unprotected categories include advocacy intended and likely to incite imminent lawless action; obscenity; defamation; speech integral to criminal conduct; so-called fighting words; child pornography; fraud; true threats; and speech presenting some grave and imminent threat the government has the power to protect. *United States v. Alvarez*, 567 U.S. 709, 717 (2012) (plurality opinion) (citations omitted). However, "[t]he prospect of crime . . . by itself does not justify laws suppressing speech," *Free Speech Coalition*, 535 U.S. at 245 (citation omitted), "speech may not be prohibited because it concerns subjects offending our sensibilities," *id.* (citation omitted), and "[s]exual expression which is indecent but not obscene is protected by the First Amendment," *Sable*

6

*Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989).

## I.  The child-pornography exception is inapplicable.

The Supreme Court first announced the child-pornography exception to the First Amendment in *New York v. Ferber*, 458 U.S. 747 (1982).  As the Court later explained,

> Where the images are themselves the product of child sexual abuse, *Ferber* recognized that the state had an interest in stamping it out without regard to any judgment about its content.  The production of the work, not its content, was the target of the statute . . . .
>
> *Ferber* upheld a prohibition on the distribution and sale of child pornography, as well as its production, because these acts were "intrinsically related" to the sexual abuse of children in two ways.  First, as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated.  Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and well-being.  Second, because the traffic in child pornography was an economic motive for its production, the State had an interest in closing the distribution network . . . .  Under either rationale, *the speech had what the Court in effect held was a proximate link to the crime from which it came.*

*Free Speech Coalition*, 535 U.S. at 249-50 (citations omitted) (emphasis added).

Thus, under *Free Speech Coalition*, the child-pornography exception applies when the law at issue aims to prevent the abuse of children or a record of that abuse.  And, under *Free Speech Coalition*, a law banning material that is *like* child

7

pornography, but that does not fall within the child-pornography exception's twin rationales, infringes on the First Amendment.  In that case, the Court considered neighboring provisions of the statute at issue here, which defined child pornography to include depictions that "appear[] to be" child pornography (which the Court called "virtual child pornography"), and depictions that are "advertised, promoted, presented, described, or distributed in such a manner that conveys the impression" that it includes child pornography.  *Id.* at 241-42.

The Court distinguished *Ferber*:

> In contrast to the speech in *Ferber*, speech that itself is the record of sexual abuse, the [statute] prohibits speech that records no crime and creates no victims by its production.  Virtual child pornography is not "intrinsically related" to the sexual abuse of children, as were the materials in *Ferber*.  While the Government asserts that the images can lead to actual instances of child abuse, the causal link is contingent and indirect.  The harm does not necessarily follow from the speech, but depends upon some unquantified potential for subsequent criminal acts.

*Id.* at 250 (citations omitted).

In holding that the statutory provisions at issue were unconstitutional, the Court rejected several arguments advanced by the Government.  First, the Government argued that virtual child pornography rarely will be valuable speech.  *Id.* But, the Court explained, "*Ferber*'s judgment about child pornography was based upon how it was made, not what it communicated," and "*Ferber* did not hold that

8

child pornography is by definition without value." *Id.* at 250-51.  Instead, "the Court recognized some works in this category might have significant value, but relied on virtual images – the very images prohibited by [the statute] – as an alternative and permissible means of expression . . . ." *Id.* at 251.

Next, the Government argued that the statute is necessary "because pedophiles may use virtual child pornography to seduce children." *Id.*  But, the Court said, "speech within the rights of adults to hear may not be silenced completely in an attempt to shield children from it." *Id.* at 252.  Next, the Government argued that "virtual child pornography whets the appetites of pedophiles and encourages them to engage in illegal conduct." *Id.* at 253.  But "the mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." *Id.*  Next, the Government argued that extinguishing the market for virtual child pornography would help extinguish the market for real child pornography.  *Id.* at 254.  But the Court explained, "In the case of the material covered by *Ferber*, the creation of the speech is itself the crime of child abuse; the prohibition deters the crime by removing the profit motive . . . .  We need not consider where to strike the balance in this case, because here, there is no underlying crime at all." *Id.*  Finally, the Government argued that virtual child pornography is so like real child pornography that it would be more difficult to prosecute the real thing without the ban on virtual child pornography.  *Id.*  But, the Court said, "The

Government may not suppress lawful speech as the means to suppress unlawful speech." *Id.* at 255.

The Court in *Free Speech Coalition* touched on the statutory provision at issue here, § 2256(8)(C):

> Section 2256(8)(C) prohibits a more common and lower tech means of creating virtual images, known as computer morphing. Rather than creating original images, pornographers can alter innocent pictures of real children so that the children appear to be engaged in sexual activity. Although morphed images may fall within the definition of virtual child pornography, they implicate the interests of real children and are in that sense closer to the images in *Ferber*.

*Id.* at 242. However, the Court said, "Respondents do not challenge this provision, and we do not consider it." *Id.*

Here, as in *Free Speech Coalition*, the computer-morphed pornography at issue does not fall into *Ferber*'s child-pornography exception to the First Amendment because it is not intrinsically related to the abuse of any child. As in *Free Speech Coalition*, "the images are [not] themselves the product of child sexual abuse," and "the content" of the work, not its "production" is the target of the statute. *See id.* at 249. And, like in *Free Speech Coalition*, neither of *Ferber*'s two rationales applies: the speech at issue here is not "a permanent record of a child's abuse," nor is the statute an effort to prevent the "economic motive" for the production of real child

pornography through the actual exploitation of children. *See id.* at 249-250. That is, as in *Free Speech Coalition*, the speech does not have "a proximate link" to an underlying crime, the actual victimization of the minor. *See id.* at 250. As in *Free Speech Coalition*, morphed pornography "is not 'intrinsically related' to the sexual abuse of children, as were the materials in *Ferber*." *See id.*

Further, any of the justifications for an exception to the First Amendment the Government might advance were considered and rejected in *Free Speech Coalition*. It matters not that very often morphed child pornography may have low value, as "*Ferber*'s judgment about child pornography was based on how it was made, not what it communicated," and "*Ferber* did not hold that child pornography is by definition without value." *Id.* at 250-51. Instead, as in *Free Speech Coalition*, the *Ferber* exception expressly relies on the possibility of creating the speech without abusing children, as happened here. *See id.* at 251.

It matters not that pedophiles may use the material to seduce children because, as in *Free Speech Coalition*, "speech within the rights of adults to hear may not be silenced completely in an attempt to shield children from it." *See id.* at 252. It matters not that morphed pornography might "whet the appetites of pedophiles" because, as in *Free Speech Coalition*, "the mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." *See id.* at 253. It matters not

11

that extinguishing the market for morphed pornography would help diminish the market for real child pornography because, as in *Free Speech Coalition*, "here, there is no underlying crime at all." *See id.* at 254. And, finally, it matters not that the existence of morphed pornography might make the prosecution of real child pornography offenses more difficult, because, as in *Free Speech Coalition*, "[t]he Government may not suppress lawful speech as the means to suppress unlawful speech." *See id.* at 255.

Accordingly, *Ferber*'s child-pornography exception does not apply to Mr. Robinson's morphed pornography.[1]

## II.  None of the falsity-based exceptions applies.

There is no First Amendment exception for merely false speech. *Alvarez*, 567 U.S. at 722 (plurality opinion). There are, however, exceptions available for defamation, *see id.* at 717 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)), and similar torts like "false light" or "right of privacy," *see Time, Inc. v. Hill*, 385 U.S. 374, 381 (1967). However, for any of these exceptions to apply, the speech at issue must assert some fact. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988);

---

[1] Additionally, the obscenity exception does not apply because the statute does not include as an element any of the three-part test for obscenity. *See Free Speech Coalition*, 535 U.S. at 246 (citing *Miller v. California*, 413 U.S. 15, 24 (1973)).

12

*Letter Carriers v. Austin*, 418 U.S. 264, 284-86 (1974); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16-17 (1990) (citing *Greenbelt Cooperative Publishing Assn., Inc. v. Bresler*, 398 U.S. 6, 13-14 (1970)).

The speech at issue in this case asserts no fact.  Instead, it asserts an idea or entertains a fantasy, the sexualization of the minor.  No element of the offense requires the Government to show that Mr. Robinson presented the speech at issue as true, e.g., an actual record of the minor engaged in sexual activity.  The falsity-based exceptions therefore do not apply.

## III.  The Court should not create a new exception.

"Although the First Amendment stands against any 'freewheeling authority to declare new categories of speech outside the scope of the First Amendment,' the Court has acknowledged that perhaps there exist 'some categories of speech that have been historically unprotected . . . but have not yet been specifically identified or discussed . . . in [the Court's] caselaw.'"  *Alvarez*, 567 U.S. at 722 (quoting *Stevens*, 599 U.S. at 473).  "Before exempting a category of speech from the normal prohibition on content-based restrictions, however, the Court must be presented with 'persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription.'"  *Id.* (quoting *Brown*, 564 U.S. at 792).  The Court has refused to create new exceptions for virtual child pornography, *see Free Speech Coalition*, 535 U.S. at 249, false speech, *Alvarez*, 567 U.S. at 722, animal

13

"crush" videos, *Stevens*, 559 U.S. at 472, violent video games, *Brown*, 564 U.S. at 792, and "outrageous" speech that causes emotional pain, *see Snyder v. Phelps*, 562 U.S. 443, 454 (2011) (extending First Amendment protection to protest signs outside of United States servicemembers' funerals with slogans like "Thank God for Dead Soldiers").

Importantly, the Court may not create a new exception through "an ad hoc calculus of costs and benefits . . . ." *See Stevens*, 559 U.S. at 471.

> When we have identified categories of speech as fully outside the protection of the First Amendment, it has not been on the basis of a simple cost-benefit analysis. In *Ferber*, for example, we classified child pornography as such a category, 458 U.S. at 763. We noted that the State of New York had a compelling interest in protecting children from abuse, and that the value of using children in these works (as opposed to simulated conduct or adult actors) was *de minimis*. *Id.* at 756-57. But our decision did not rest on this "balance of competing interests" alone. *Id.* at 764. We made clear that *Ferber* presented a special case: The market for child pornography was "intrinsically related" to the underlying abuse, and was therefore "an integral part of the production of such materials, an activity illegal throughout the Nation." *Id.* at 759. As we noted, "'[i]t rarely has been suggested that the constitutional freedom of speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute.'" *Id.* at 761-62 (quoting *Giboney* [*v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949))]. *Ferber* thus grounded its analysis in a previously recognized, long-established category of unprotected speech, and our subsequent decisions have shared this understanding.

14

*Id.* (citing *Osborne v. Ohio*, 495 U.S. 103, 110 (1990); *Free Speech Coalition*, 535 U.S. at 249-50).

Here, there is no "previously recognized, long established" exception to the First Amendment for morphed child pornography. And, as *Stevens* emphasized, the Court may not create one through an ad hoc balancing of costs and benefits. "[W]hatever the challenges of applying the Constitution to ever-advancing technology, 'the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary' when a new and different medium for communication appears." *Brown*, 564 U.S. at 790 (quoting *Joseph Burstyn*, 343 U.S. at 503). The speech here is categorically protected by the First Amendment.

For this reason, the Fifth Circuit's treatment of this issue is unconvincing. *See United States v. Mecham*, 950 F.3d 257, 260 (2020). *Mecham* announced a categorical exception for morphed child pornography because of "the interest in preventing reputational or emotional harm to children." *Id.* at 266. But this is no more than an exercise in the ad hoc, "freewheeling" cost-benefit analysis rejected by *Stevens*. According to *Mecham*, the cost of morphed child pornography is high (in terms of reputational and emotional harm to minors) and the benefit is minimal (in terms of the value of the speech). *Mecham* made no effort to identify a longstanding historical exception to First Amendment protection. This is precisely the mode of analysis rejected by *Stevens* and *Alvarez*.

15

The Eight Circuit had the better argument in *United States v. Anderson*, 759 F.3d 891, 894 (8th Cir. 2014). Citing *Stevens*, and responding to the Government's argument that morphed images are unprotected by the First Amendment, the Eighth Circuit recognized, "The Government's position is difficult to square with the Supreme Court's recent explanation why child pornography is categorically unprotected under the First Amendment." *Id.* (citing *Stevens*, 559 U.S. at 471). As the Eighth Circuit recognized, the child-pornography exception is no more than an offshoot of the longstanding exception for "speech or writing used as an integral part of conduct in violation of a valid criminal statute," "namely, the sexual abuse of minors inherent in the production of child pornography." *Id.* And, as the court recognized, "[n]o minor was sexually abused in the production of Anderson's image." *Id.* at 895. The Eighth Circuit's view is more faithful to *Stevens*, and this Court should adopt it.[2]

## IV. The Court should not engage in any balancing test.

Where a law is viewpoint-based, a court may not sustain it under the First Amendment through any resort to means-end scrutiny. This statute is not viewpoint

---

[2] Two other circuits have sided with the Fifth Circuit, but did so without considering the *Stevens* limitation on cost-benefit balancing. *See Doe v. Borland*, 698 F.3d 877, 883-84 (6th Cir. 2012); *United States v. Hotaling*, 634 F.3d 725 (2d Cir. 2011) (decided before *Stevens*).

neutral because liability turns on whether the producer or possessor of the material at issue views it in a sexual manner.

    A.  <u>No resort to balancing tests is permitted for viewpoint-based statutes.</u>

A content-based speech restriction may be constitutional, even if it does not fall into one of the First Amendment's categorical exceptions, if the Government can show that the restriction passes strict scrutiny. *See Brown*, 564 U.S. at 799. But a law that suppresses speech because of its viewpoint is unconstitutional per se, without any need to consider its purpose or sweep. *See Iancu v. Brunetti*, 588 U.S. 388, 398-99 (2019). Thus, a finding that a law is viewpoint-based leads to a finding that the law is unconstitutional. *See id.* at 393-94, 398-99.

    B.  <u>Section 2252A is viewpoint-based.</u>

A law is viewpoint-based when it singles out "ideas that offend." *See id.* at 396. The child pornography statute singles out an idea that offends – the sexualization of children. It is not viewpoint neutral because the same material in different hands, or produced with different means or intent, is treated differently.

One basis for claiming material is child pornography under the statute is to say that it involves the "lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). In *United States v. Holmes*, 814 F.3d 1246, 1247 (11th Cir. 2016), the defendant was "charged with surreptitiously videotaping his teenage stepdaughter performing her daily bathroom routine over a period of

17

approximately five months, and being in possession of videos and depictions of her in the nude." *Id*. at 1247. For this conduct, the jury found him guilty of violations of § 2251(a) and § 2252(a)(4)(B), the prohibitions on the production and simple possession of child pornography. On appeal, the defendant argued "that the subject images do not constitute child pornography because they do not depict a minor engaged in 'sexually explicit conduct' as defined by 18 U.S.C. § 2256(2)(A)." *Id*. That is, the defendant argued "the images depict 'mere nudity,' making him at most a voyeur. And based upon his contention that the images do not depict a 'lascivious exhibition of the genitals or pubic area,' Holmes argue[d] he cannot be guilty of producing, attempting to produce, or possessing child pornography." *Id*. at 1251. The Eleventh Circuit explained, "The question presented here is whether the statutory phrase 'lascivious exhibition of the genitals or pubic area' may include depictions of the 'otherwise innocent' conduct of a minor which are surreptitiously taken by an alleged producer and made lascivious based on upon the actions of the producer, not the child." *Id*. Contrary to the defendant's argument, the court held "that depictions of otherwise innocent conduct by a minor can constitute 'a lascivious exhibition of the genitals or pubic area' based on the actions of the individual creating the depiction." *Id*. at 1247.

The statute is therefore not viewpoint-neutral because liability turns on the perspective of the producer, possessor, or viewer of the material, under *Holmes*. If the

18

producer of the material aims to present a sexual message – the child as sexual object – liability attaches.  If the producer does not, perhaps because the material was merely created for family posterity, no liability attaches.  The pedophile is punished while the nostalgic mother is not, all for the possession of the same material, under *Holmes*.  The child as sexual object is an idea that offends, and liability turns on whether that idea is expressed or intended.  The statute is therefore not viewpoint neutral.[3]  And under *Iancu*, that is fatal to its constitutionality.

## V.  The statute is unconstitutional facially and as applied.

"In the First Amendment context, . . . a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'"  *Stevens*, 559 U.S. at 473 (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)).  Section 2256(8)(C)'s "plainly legitimate sweep" is only morphed pornography produced with the *body* of a child – and in that instance, there is no reason to resort to § 2256(8)(C), because § 2256(8)(A) would apply.  That leaves "a substantial number of applications" that are unconstitutional, namely, the application of the

---

[3] In *Anderson*, the Eighth Circuit treated the statute as content-based without considering whether it was viewpoint neutral, and accordingly applied strict scrutiny. *Anderson*, 759 F.3d at 895. This aspect of the case is unconvincing because of the court's failure to determine whether the statute is viewpoint neutral.

19

statute to depictions of minors' likenesses on the body of adults. And these unconstitutional applications are the only reason to invoke the offending provision, since other provisions apply to material produced through the actual exploitation of minors.

In any event, whether the statute is unconstitutionally overbroad as a facial matter, it is applied here unconstitutionally. The Government's evidence is that Mr. Robinson placed the minor's likeness on the bodies of adults. However despicable his conduct may be, it is constitutionally protected. The statute is unconstitutional as applied, and this Court should therefore dismiss the indictment.

DATED this 18th day of August 2025.

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER

/s Samuel E. Landes
Samuel E. Landes, Esq.
D.C. Bar No. 1552625
Assistant Federal Defender
400 North Tampa Street, Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Email: Samuel_Landes@fd.org

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th of August 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to AUSA Courtney Derry.

/s Samuel E. Landes
Samuel E. Landes, Esq.
Assistant Federal Defender

21