UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      CASE NO: 8:25-cr-256-MSS-AEP

BRUCE RAYMOND ROBINSON, JR.,

        Defendant.
_____/

## ORDER

**THIS CAUSE** comes before the Court for consideration of the Motion to Suppress, (Dkt. 43), of Defendant Bruce Raymond Robinson, Jr., the response in opposition thereto of the Government, (Dkt. 53), and Defendant's reply. (Dkt. 56) Upon consideration of all relevant filings, case law and being otherwise fully advised, the Court **DENIES** Defendant's Motion.

**I.    Background**

On June 29, 2023, someone uploaded a video of child pornography to Defendant's Google account. (Dkt. 43 at 3) Google realized this on April 10, 2025. (Id.) Google made a report to the National Center for Missing and Exploited Children ("NCMEC") CyberTipline the next day, April 11, 2025, providing the video and information about it. (Id.) A portion of the resulting report notes, "Did Reporting ESP [Electronic Service Provider] view entire contents of uploaded file? Yes." (Id.) Google

explained, "With respect to the portion of this CyberTip containing the heading: 'Was File Reviewed by Company?', when Google responds 'Yes' it means the contents of the file reported were viewed by a Google reviewer concurrently with or immediately preceding the sending of the CyberTip." (Id.) However, Google continued, "For video content specifically, if Google indicates 'Yes', it means the contents of the file reported were viewed by a Google reviewer concurrently with or immediately preceding the sending of the CyberTip to the extent of confirming it contained apparent CSAM [child sexual abuse material] . . . ." (Id.) NCMEC received Google's report and the video and generated its own report. (Id.) NCMEC staff did not view the video. (Id.) NCMEC sent its report and the video to a law enforcement officer, Task Force Officer Julio Tagliani. (Id.) Without seeking a warrant, TFO Tagliani viewed the video in its entirety and confirmed it depicted child pornography. (Id. at 3–4; Dkt. 1 at 3–4)

TFO Tagliani then applied to a Florida state court judge for a warrant to search Defendant's Google account. (Dkts. 43 at 4; 43-2 at 3–5) In his affidavit, TFO Tagliani recounted the Google cyber tip, the contents of the video, and the date and time it had been uploaded. (Dkts. 43 at 4; 43-2 at 3–4) The judge granted the application and issued the warrant. (Dkts. 43 at 4; 43-1 at 1–4) The Florida warrant required Google to provide information for a date range of June 1, 2023, to April 11, 2025. (Dkts. 43 at 4; 43-1 at 2–4) The warrant authorized a search for the following:

- Google account subscriber information, as defined in 18U.S.C. § 2703(c)(2);
- Google account recent activity logs and connected devices;

- Google email messages (Gmail) including drafts and those in the trash;
- Google Pay – Account information and transactions;
- Calendar – calendar events;
- Contacts – people contact files;
- Photos – photos, videos and albums, and associated metadata;
- Drive – documents, spreadsheets, presentations and files, and associated metadata;
- Keep – titles and the notes;
- Hangouts and Chats – messages, including attachments such as photos;
- Location history – location data and deletion records;
- My Activity – searches and browsing activity, including activity from Web & App Activity, Google Assistant, and Google Home;
- Google Voice – Google Voice information, including Google Voice basic subscriber information, call logs, forwarding number, text messages and voicemails;
- Android – records for Android devices, to include subscriber information, other associated accounts, cellular carrier information, and device/hardware information; [and]
- Google Play – Google Play purchases made and Google Play applications downloaded[.]

(Dkts. 43 at 4–5; 43-1 at 4) When TFO Tagliani searched the information Google provided, he found more incriminating files. (Dkt. 43 at 5) With this information, he applied for federal search warrants reaching Defendant's person, residence, cell phones, and vehicles. (Id.) The applications for the federal warrants included information TFO Tagliani learned from the NCMEC cyber tip and Florida search warrant directed at Google. (Id.) When law enforcement executed the federal warrants they located Defendant and interrogated him. (Id.) Law enforcement confronted Defendant with the evidence they had already collected and Defendant confessed. (Id.)

3

Defendant now contends he had a reasonable expectation of privacy in the contents of his Google account. He additionally contends Google's warrantless search of the video file and transmission of it to NCMEC was a violation of the Fourth Amendment because Google acted as an agent of the government. Even if Google was not an agent of the government, Defendant contends, TFO Tagliani's warrantless review of the video exceeded the scope of Google's private review because Google did not review the entire video. Defendant also contends TFO Tagliani's review of the video was a trespass to chattels and thus violative of the Fourth Amendment. Further, Defendant contends that evidence downstream of TFO Tagliani's review of the video should be suppressed as fruit of the poisonous tree.

Separately and in the alternative, Defendant contends the Florida search warrant directed at Google was overbroad and largely lacked probable cause such that the resulting search was unconstitutional. Moreover, Defendant contends the good-faith exception to the exclusionary rule does not apply because the Florida search warrant was so facially deficient in failing to particularize the place to be searched and things to be seized that TFO Tagliani could not have reasonably considered it valid and because TFO Tagliani's affidavit was so lacking in indicia of probable cause for most of what the warrant permitted that official belief in it was unreasonable. Consequently, Defendant contends, evidence the Government subsequently obtained should be suppressed under the fruit of the poisonous tree doctrine.

The Government takes opposing positions. The Government contends Defendant had no reasonable expectation of privacy in the contents of his Google

4

account as a result of Google's terms of service, and the Government could not have trespassed in Defendant's Google account for purposes of the Fourth Amendment because there was no physical intrusion. The Government also contends Google was a private actor rather than a government agent when Google searched Defendant's video and provided it to NCMEC. The Government further contends its review of the video did not exceed the scope of Google's review such that the private search doctrine renders permissible the Government's subsequent review. Moreover, the Government contends the Florida warrant directed at Google was sufficiently particular and not overbroad, and, in the alternative, TFO Tagliani acted in good faith in conducting the search authorized by the warrant such that its resulting evidence should not be suppressed under the exclusionary rule. Finally, because none of the searches violated Defendant's constitutional rights, the Government contends, no evidence should be suppressed as fruit of the poisonous tree.

For the reasons that follow, the Court finds that

1. Google was not a government agent when Google searched Defendant's video and provided it to NCMEC;

2. The Government's review of the video did not exceed the scope of Google's review,

3. Even if it did exceed the scope, the good faith exception to the exclusionary rule applies;

4. The Florida search warrant directed at Google did not lack particularity and was not overbroad,

5. Even if the search warrant lacked particularity or was overbroad, the good faith exception to the exclusionary rule applies; and,

6. In the absence of a preceding constitutional violation, the fruit of the poisonous tree doctrine does not apply to downstream evidence in this case.

## II. Discussion

### a. Google's initial review of the video did not implicate Defendant's constitutional rights.

Defendant contends that Google's search of Defendant's documents violated his Fourth Amendment rights because he contends Google acted as an agent of the government when Google searched Defendant's account and detected the apparent child pornography that became the basis for the subsequent search warrants. (Dkt. 43 at 8–9)

The Protect Our Children Act of 2008 ("Protect Act") dictates that an electronic service provider ("ESP") must make a report to NCMEC of "any [known] facts or circumstances from which there is an apparent violation of" specified criminal offenses involving child pornography. 18 U.S.C. § 2258A(a)(1)–(2). NCMEC is mandated by the Protect Act to make each CyberTipline report available to federal law enforcement. Id. § 2258A(c).

"Although the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative, the Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government." Skinner v. Ry. Labor Execs.' Ass'n, 489 U.S. 602, 614 (1989)

6

(citations omitted). In this Circuit, for a private person to be considered an agent of the government for Fourth Amendment purposes, courts look to two factors: "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." United States v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003). The burden of establishing that a private actor is a government agent rests with Defendant. United States v. Williamson, No. 8:21-CR-355-WFJ-CPT, 2023 WL 4056324, at *12 (M.D. Fla. Feb. 10, 2023), report and recommendation adopted (M.D. Fla. Mar. 21, 2013) (citations omitted)).

Defendant contends that Google was a government agent because Google complied with, and provided information beyond what was necessary to comply with, its reporting obligations pursuant to § 2258A.

As Magistrate Judge Tuite explained in Williamson,

> Mere compliance with that law, however, does not constitute state action by a private entity. *United States v. Rosenow*, 50 F.4th 715, 730 (9th Cir 2022) (noting that "a private actor does not become a government agent simply by complying with a mandatory reporting statute") (citations omitted)). Moreover, the Protect Act only imposes an obligation upon ESPs to report child pornography that is *known* to them and expressly states that ESPs are not required to search for it. 18 U.S.C. § 2258A(f); *Rosenow*, 50 F.4th at 730 (drawing a distinction under the Protect Act between "mandated *reporting*" and "mandated *searching*"); *United States v. Meals*, 21 F.4th 903, 907 (5th Cir. 2021) (observing that while the Protect Act insists ESPs report child exploitation to NCMEC, the Act "neither compels nor coercively encourages internet companies to search actively for such evidence").

2023 WL 4056324, at *13 (italics in original); see also United States v. Miller, 982 F.3d 412, 424 (6th Cir. 2020) (declining to find Google to be a state actor based upon the

Protect Act, reasoning that the Protect Act directs ESPs "only to report child pornography that they know of; it does not compel them to search for child pornography of which they are unaware") (collecting cases); <u>United States v. Ringland</u>, 966 F.3d 731, 736 (8th Cir. 2020) (same).

The Court finds that Google did not become a government agent by complying with a reporting requirement. Moreover, Defendant does not allege that the government knew of, and thus could have instigated or cooperated with, Google's review of Defendant's materials before the government received from NCMEC materials relating to Defendant. Defendant fails to allege facts sufficient to satisfy the first prong of the <u>Steiger</u> standard. Defendant does not fare better on the second prong. Defendant offers no factual basis for this Court to conclude that, by forwarding information to NCMEC consistent with § 2258A, Google acted with intent to aid law enforcement rather than to further some other objective. The Court concludes, therefore, that Defendant has not established that the initial search by Google, a private entity, violated the Fourth Amendment.

      **b.    The Government's initial warrantless review of the video was not unconstitutional.**

A warrantless search performed by the Government following a private search violates the Fourth Amendment only to the extent "it is broader than the scope of the previously occurring private search." <u>United States v. Sparks</u>, 806 F.3d 1323, 1334 (11th Cir. 2015), <u>overruled on other grounds by United States v. Ross</u>, 963 F.3d 1056, 1062 (11th Cir. 2020) (en banc) (citations omitted). A government search crosses this

8

threshold when it "meaningfully exceeds" the parameters of the private search, United States v. Harling, 705 F. App'x 911, 816 (11th Cir. 2017),[1] such as when an officer "learn[s] new, critical information" from his examination of the materials at issue, United States v. Montijo, No. 2:21-CR-75-SPC-NPM, 2022 WL 93535, at *4–5 (M.D. Fla. Jan. 10, 2022); see also State v. Rivera, 241 P.3d 1099, 1101 (N.M. 2010) ("Under the Fourth Amendment of the United States Constitution, a law enforcement officer may repeat a private search and may exceed the scope of the private search, so long as (1) the expansion was only de minimus, and (2) obtaining a warrant would only minimally advance Fourth Amendment interests.")

There is no indication TFO Tagliani learned more from viewing the video than Google provided. Google reviewed the video sufficiently to conclude it contained apparent child pornography. (Dkts. 43 at 3; 53 at 2–3) By viewing the video, TFO Tagliani did not intrude on any privacy rights. This case is akin to United States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). There, a private person inspected the contents of a box and discovered a tube which, upon further inspection, contained plastic bags containing white powder. 466 U.S. at 111. After re-placing the plastic bags into the tube and placing the tube back into the box, the private person summoned law enforcement. Id. The responding agent's subsequent removal of the plastic bags and his visual inspection of their contents enabled him to "learn nothing

---

[1] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it may be considered as persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Where cited herein, any unreported decision of a panel of the Circuit is considered well-reasoned and is offered as persuasive, not binding.

that had not previously been learned during the private search." Id. at 112. Based on the private person's statements, it was virtually certain that the box contained nothing else of significance that the agent had not already learned from the private person. Id. at 119. The Government was merely confirming the private person's account regarding the suspected contents of the box. Id. Similarly, in this case, viewing the video merely enabled TFO Tagliani to confirm what Google had already conveyed through the cyber tip it generated—that the video was suspected of constituting child pornography. The Government did not further infringe on Defendant's privacy, but rather guarded against the risk that Google's report was wrong. "Protecting the risk of misdescription hardly enhances any legitimate privacy interest, and is not protected by the Fourth Amendment." Id.

Even if Google reviewed less than the entire video, Google reviewed the video sufficiently to conclude it contained apparent contraband. TFO Tagliani's viewing of the entire video to confirm Google's conclusion did not exceed the scope of Google's search. See United States v. Garcia-Bercovich, 582 F.3d 1234, 1238 (11th Cir. 2009) (holding that police search of one of thirteen boxes of marijuana following unsolicited private search of a different box was within the same scope as the initial private search because district court did not err in considering entire shipment a "single package" covered by single shipping manifest); see also Rogers v. Sec'y, Dep't of Corr., No. 8:17-CV-2680-T-33SPF, 2019 WL 2646544, at *6 (M.D. Fla. June 27, 2019) (finding a § 2255 petitioner did not "identif[y] any clearly established federal law holding that when a private searcher views at least one image on a disk and tells police that the disk

10

contains contraband, police exceed the scope of the private search by viewing other images on that same disk"), aff'd, 829 F. App'x 437 (11th Cir. 2020).

Even if the private search doctrine did not apply,[2] the good faith exception would excuse the search. The exception applies "across a range of cases," Davis v. United States, 564 U.S. 229, 238, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011).

Here TFO Tagliani acted in objectively reasonable reliance on the report from NCMEC to view the entire video. Defendant contends Google ended its review of the video once it had seen enough to determine it contains "CSAM." (Dkt. 43 at 17) Indeed, there is some indication in the briefing before the Court that Google's report to NCMEC suggests that Google did not review the full video. (Dkt. 43 at 3)[3] But according to Defendant, NCMEC created *its own* report, and it was TFO Tagliani's review of *NCMEC's report* that prompted TFO Tagliani to view the entire video. (Id.) NCME's report, perhaps erroneously, indicated that Google reviewed the entire file. (Dkts. 1 at 2–4; 43 at 3–4; 53 at 3; see also Dkt. 56 at 11 (Defendant alleging that

---

[2] The Court assumes without deciding that Defendant had a legitimate expectation of privacy in the video at issue under the Fourth Amendment and that it was capable of being subject to a trespass. The Court does not need to address the question of whether Google's terms of service negated any reasonable expectation of privacy or whether the video was capable of being trespassed upon. See United States v. Laplante, No. 1:15-CR-1-MP-GRJ, 2016 WL 1714859, at *9 (N.D. Fla. Mar. 29, 2016), report and recommendation adopted, No. 1:15-CR-00001-MP-GRJ, 2016 WL 1717187 (N.D. Fla. Apr. 28, 2016) ("[E]ven if the search and seizure of the items . . . was unreasonable or constituted a trespass, the Fourth Amendment does not apply because a search by a private individual does not raise Fourth Amendment implications.") (citing United States v. Ford, 765 F.2d 1088, 189–90 (11th Cir. 1985)).

[3] Neither Google's report to NCMEC nor NCMEC's report to the Government appears in the record before the Court. As a result, the Court relies on the Parties' descriptions of the reports.

"NCMEC changes the meaning of the company's report when it produces its own report")). Consequently, TFO Tagliani's review of the entire video was based on objectively reasonable reliance on a report that indicated the video had been reviewed in its entirety by a private party. See United States v. Weber, No. 22-30191, 2024 WL 722558, at *2 (9th Cir. Feb. 22, 2024), cert. denied, 145 S. Ct. 155 (2024) ("In this case, Detective Hall reasonably relied on the CyberTip report that indicated Instagram had viewed the media attachments. Acting in reliance on this information, as well as training she had received on Instagram's policies and practices, Detective Hall viewed the media believing that she was not exceeding the scope of Instagram's search vis-à-vis the private search doctrine. … [T]he good-faith exception applies."). See also United States v. Leon, 468 U.S. 897, 918 (1984) (stating the exclusion of evidence is an "extreme sanction" that "should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule"). "Police practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield meaningful deterrence, and culpable enough to be worth the price paid by the justice system." Davis, 564 U.S. at 240 (cleaned up). TFO Tagliani's conduct in this case does not trigger that harsh sanction. Accordingly, the good faith exception would provide additional support for the denial of the motion to suppress.

      **c.**    **The Florida search warrant directed at Google was not unconstitutional.**

"The Fourth Amendment requires a warrant to 'particularly' describe 'the place to be searched, and the persons or things to be seized.'" United States v. McCall, 84 F.4th 1317, 1327 (11th Cir. 2023) (quoting U.S. Const. amend. IV). While recognizing the importance of the particularity requirement, the Eleventh Circuit has indicated it should be applied with "a practical margin of flexibility" and that warrants need only be as "specific as the circumstances and nature of the activity under investigation permit[ ]." United States v. Alford, 744 F. App'x 650, 652–53 (11th Cir. 2018) (citing United States v. Bradley, 644 F.3d 1213, 1259 (11th Cir. 2011); United States v. Moody, 977 F.2d 1425, 1432 (11th Cir. 1992)).

Here, the Florida search warrant directed at Google did not lack particularity and was not overbroad. The probable cause affidavit sufficiently detailed the cyber tip and video at issue. (Dkt. 43-2 at 3–4) The affidavit further identified Defendant as residing within the Tampa Police Department's jurisdiction. (Id. at 4) The affidavit and warrant limited the temporal scope of the information sought to the same month the video was uploaded to Google through the date Google made its report to NCMEC. (Dkts. 43-1 at 4; 43-2 at 4) The warrant was supported by probable cause to search for contents dating to this period to uncover evidence of Defendant's ongoing possession of child pornography. Although TFO Tagliani requested additional information from Defendant's Google account, (Dkts. 43-1 at 4; 43-2 at 4), the information is pertinent to establishing and confirming the identity of the user of the account. User attribution is necessary to confirm the identity of a suspect in a digital offenses case. Requesting an expansive set of information was deemed by the Eleventh

13

Circuit in Alford to be pertinent to the issue of the target's identity. Alford, 744 F. App'x at 652–53. Because the warrant contained a temporal limitation that corresponded closely to the date the video first appeared in Defendant's account through the date Google made its report to NCMEC, the warrant contained the "'preferred method' of particularization for the scope of a search warrant." United States v. Gyetvay, 149 F.4th 1213, 1234 (11th Cir. 2025) (quoting McCall, 84 F.4th at 1328). There is no basis for resulting evidence to be suppressed on the basis that the Florida search warrant is overbroad or insufficiently particular.

In the alternative, the Court holds the good faith exception applies. When an officer has obtained a search warrant from a judge or magistrate and has acted within its scope in good faith, "there is no police illegality and thus nothing to deter." Leon, 468 U.S. at 921. There is no evidence that the Florida search warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers c[ould not have] reasonably presume[d] it to be valid." Id. at 923. It indicated there was probable cause to believe that a Google account used by Defendant contained child pornography, and it was sufficiently detailed that a reasonable officer would have believed in good faith that the warrant was valid. Pursuant to the good faith exception, the Court may suppress evidence obtained in violation of the Fourth Amendment "only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Illinois v. Krull, 480 U.S. 340, 348–49 (1987). There is no basis for the Court to reach such a conclusion on

the allegations before it. Any deterrence benefits of suppression of evidence do not outweigh its costs in this case.

Finally, having identified no preceding constitutional violation, the Court finds that the fruit of the poisonous tree doctrine does not apply to any downstream evidence in this case.

### III. Conclusion

Upon consideration of the foregoing, the Court **DENIES** Defendant Bruce Raymond Robinson, Jr.'s Motion to Suppress. (Dkt. 43).

**DONE and ORDERED** in Tampa, Florida this 31st day of October, 2025.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
United States Marshal Service
United States Probation Office
United States Pretrial Office